## STATE *EX REL.* CUMMINGS v. KIRBY.

1. A succeeding Board of County Commissioners has no authority to review and revise the action of its predecessor in auditing and allowing a claim against the county.

2. The statute of limitations does not apply to a proceeding in *mandamus,*

but where there is unreasonable delay, the Court, in the exercise of its discretion, will refuse to issue the writ, as in this case, where the application was made ten years after the claim was allowed, and seven years after liability denied, without any explanation for the delay.

Application for mandamus in behalf of A. W. Cummings against A. H. Kirby and others, County Commissioners of Spartanburg. The opinion states the case.

Messrs. 'Shand & Bryce, for relator. .

Messrs. Bobo & Carlisle, contra.

October 2, 1882. The opinion of the Court was delivered by Mr. Justice McIver.—This was an application to this Court, in the exercise of its original jurisdiction, for a mandamus to compel the respondents, as. County Commissioners of the County of Spartanburg, to draw their warrant on the County Treasurer in favor of the relator, for the payment of certain claims held by him against the said county, as a part of its past indebtedness.

It is not denied that, in 1872, these claims were audited and allowed by the then Board of County Commissioners of said county and have not yet been paid; nor is it denied that the Board have been authorized from year to year, since 1874, by the Legislature to levy a tax to pay the past indebtedness of the county; nor that such tax has been regularly levied and collected; nor that there are now funds in the hands of the County Treasurer applicable to the past indebtedness. The respondents, in their return, however, allege that in 1875, a succeeding Board of County Commissioners re-examined the claims held by the relator, and that they were then "found to be improper and illegal charges against the county," and proceed to specify in what particulars the said claims are illegal and improper, wherefore they have ever since refused to pay the same.

The first question,. therefore, which is presented is whether a succeeding Board of County Commissioners has any authority to review and revise the action of its predecessor in audit-

ing and allowing a claim against the county.    No such authority is conferred by any statute, nor is such a power necessarily incident to any of the powers conferred upon the Board.    We are unable therefore to discover any warrant for the exercise of such a power.   It would be in conflict with all the analogies of the law to hold that one Board· had an appellate power to review and reverse the action of its predecessor, and would lead to endless complication and confusion.    If one Board could review and revise the action of its predecessor, there is no reason why its successor should not have the same power, and the result would be that there could be no such thing as a final determination.

It must be assumed that one set of County Commissioners is quite as likely to be competent to discharge the duties of the office as another, and quite as willing to perform those duties honestly, and there is no reason why one set of County Commissioners should assume any superiority over another. When, therefore, a claim against a county has been audited and allowed by the Board of County Commissioners, acting within the limits of their jurisdiction, their action is final unless appealed from, and stands as a *quasi* judgment, which can only be set aside by a proper proceeding for that purpose, upon the ground of fraud or mistake.    *County of Richland* v. *Miller, Clerk of Commissioners,* 16 *S. C.* 236.    It seems to us, therefore, that the action of the Board of County Commissioners, in 1875, in undertaking to review and reverse the action of their predecessors was wholly without authority and entirely nugatory.    This being so, the relator must be regarded as the holder of claims against the County of Spartanburg, which have been duly audited and allowed by the proper authority, constituting a part of the past indebtedness of said County.    Unless, therefore, there is some other obstacle in his way, he would be entitled to a mandamus to compel the Board of County Commissioners to draw their warrant on the County Treasurer for the payment of the same, provided there are funds in the hands of that officer applicable to such claims.

It is contended, however, that the relator, if he ever had a right to the mandamus prayed for, has lost it by his *laches* in

not prosecuting his claim before, and that it is barred by the Statute of Limitations.    There is no special limitation to a proceeding by mandamus, and the Statute of Limitations does not apply to such a proceeding.    The rule, however, is, that where there is unreasonable delay the Court will, in the exercise of its discretion, refuse to issue the writ.    *Moses Mand.* 190; 1 *Redf. Railw.* 658 and the cases there cited. See also *King* v. *Stainforth,* 1 *M & S.* 32; *People ex rel. Phelps* v. *Delaware Common Pleas,* 2 *Wend.* 259; *People* v. *Seneca Common Pleas,* 2 *Wend.* 264, and the authorities collected in a note to 2 *Johns Cas.* 217.    In this case the relator has delayed his application for about ten years since his claims were allowed, and for about seven years since they were refused payment; and in his petition he suggests no reason for such delay.    It seems that since 1874 the Legislature has from year to year authorized the levy of a tax to pay the past indebtedness of the county, and it is difficult to conceive of any good reason which would account for this extraordinary delay on the part of the relator in making this application.    It is a mistake to suppose, as was argued, that there was a continuing admission of the validity of these claims of the relator, on the part of the County Commissioners, by placing them on the list of the past indebtedness of the county, for that allegation in the petition is distinctly denied in the return, which is not traversed.    So too the return alleges that these claims were decided by the Board of County Commissioners to be illegal, as far back as 1875, and since that time payment of the same has been frequently refused.    We are unable to discover any sufficient reason, or, indeed, any reason at all, for this extraordinary *laches* on the part of the relator, and therefore, in the exercise of that discretion to which such an application appeals, we feel bound to refuse the writ prayed for, especially as the return, which is not traversed and which must, therefore, be taken to be true, points out manifest errors in the accounts upon which these claims are founded.

The judgment of this Court is that the application for the writ of mandamus be refused.

MR. JUSTICE McGOWAN absent at the hearing.